IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

OFFICIAL STANFORD INVESTORS §
COMMITTEE, §
§
    Plaintiff, §
§
v. §          Civil Action No. 3:11-CV-0303-N
§
AMERICAN LEBANESE SYRIAN §
ASSOCIATED CHARITIES, INC., *et al.*, §
§
    Defendant. §

## ORDER

    This Order addresses Defendants American Lebanese Syrian Associated Charities,

Inc. ("ALSAC") and St. Jude Children's Research Hospital's ("St. Jude") (collectively, "St.

Jude Defendants") motion to dismiss [12]; Defendant Le Bonheur Children's Medical Center

Foundation's ("Le Bonheur") motion to dismiss [22]; Plaintiff Official Stanford Investor

Committee's ("OSIC") motion for summary judgment against Le Bonheur [73]; OSIC's

motion for summary judgment against St. Jude Defendants [77][1]; St. Jude Defendants'

motion to strike [81]; St. Jude Defendants' Motion to sever [83]; Le Bonheur's motion for

summary judgment [84]; and St. Jude Defendants' motion for summary judgment [87].  The

Court denies Defendants' motions to dismiss and for summary judgment, denies St. Jude

---

    [1]OSIC refers to St. Jude Defendants as "ALSAC Defendants."  The terms are interchangeable.

Defendants' motion to strike, denies St. Jude Defendants' motion to sever, and grants in part OSIC's motions for summary judgment.

## I. THE ORIGIN OF THE MOTIONS

This action arises out of the Ponzi scheme perpetrated by R. Allen Stanford, his associates, and various entities under his control (collectively, "Stanford"). Although the facts associated with Stanford's scheme are complex, the scheme was primarily based on the sale of fraudulent certificates of deposit ("CDs") through an offshore bank located in Antigua known as Stanford International Bank Limited ("SIBL"). Although Stanford represented to investors that the CD proceeds were only placed in low-risk, high-return funds, in reality the proceeds were funneled into speculative private equity investments and used to fund Stanford's extravagant lifestyle.

The Securities and Exchange Commission filed suit against Stanford in this Court and requested appointment of a receiver over the various Stanford entities. The Court appointed Ralph S. Janvey (the "Receiver") as receiver and assumed exclusive jurisdiction over and took possession of the 'Receivership Assets" and "Receivership Records." *See* Second Am. Order Appointing Receiver [1130] (the "Receivership Order"), *in SEC v. Stanford Int'l Bank Ltd.*, No. 3:09-CV-0298-N (N.D. Tex. filed Feb. 17, 2009) [hereinafter "Main SEC Action"]. The Court vested the Receiver with "the full power of an equity receiver under common law as well as such powers as are enumerated" in the Receivership Order. *Id.* at 3.

The Court also created OSIC, the Plaintiff in this case, to serve as a representative of the Stanford investors. *See* Order, Aug. 10, 2010 [1149] (the "Committee Order"), *in* Main

SEC Action.  The Court ordered that OSIC was to "owe fiduciary duties to Stanford investors in the same way that members of a bankruptcy committee owe fiduciary duties to unsecured creditors." *Id.* at 4.  Further, the Court granted OSIC rights and responsibilities similar to those of a creditors committee under Title 11 of the United States Code, including the right to "raise and appear and be heard on any issue in the Receivership proceedings . . . ." *Id.* at 5.  OSIC and the Receiver were to "cooperate in the identification and prosecution of actions and proceedings for the benefit of the Receivership Estate, and endeavor to consensually determine which such actions shall be brought by the Receiver, and which shall be brought . . . by [OSIC] or one or more of its members . . . ." *Id.* at 6.  Finally, the Court ordered that OSIC was imbued with authority to bring claims assigned to it by the Receiver on behalf of the Receivership Estate.  *Id.* at 7–8.

OSIC brings this action pursuant to the Committee Order on behalf of the Stanford Estate and Stanford investors.  Defendants in this action are hospitals and charitable foundations that received contributions from Stanford.  OSIC alleges Stanford made the contributions while it was insolvent and operating as a Ponzi scheme, and that they are thus subject to recovery under the Texas Uniform Fraudulent Transfer Act ("TUFTA"), TEX. BUS. & COM. CODE ANN. §§ 24.001-24.013.  In the alternative, OSIC seeks to recover the contributions under the common law doctrine of unjust enrichment.  Defendants raised motions to dismiss pursuant to Rules 9(b), 12(b)(1), 12(b)(2), and 12(b)(6).  In addition to those still-pending motions, the parties filed cross-motions for summary judgment, with Defendants relying and expounding upon the arguments initially briefed in their Rule 12

motions.  St. Jude Defendants also move to exclude expert testimony provided by OSIC's expert Karyl Van Tassel, and move to sever themselves from the case under Rules 20 and 21. The Court addresses each motion in turn.

## II. DEFENDANTS' RULE 12(b)(1) MOTIONS

Defendants both contend that the Court lacks subject matter jurisdiction over this action.  The gist of their argument is that although 28 U.S.C. § 754 grants this Court jurisdiction to hear actions brought by a federal equity receiver, it does not apply to actions brought by any other party, including an investors' committee.  The Court disagrees with this contention.

### A. Rule 12(b)(1) Legal Standard

Under the Constitution, a federal court may decide only actual "Cases" or "Controversies."  U.S. CONST. art. III, § 2.  A court properly dismisses a case where it lacks the constitutional power to decide it.  *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citing *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996))  "The justiciability doctrines of standing, mootness, political question, and ripeness all originate in Article III's 'case' or 'controversy' language." *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)) (internal quotation marks omitted).  "Standing and ripeness are required elements of subject matter jurisdiction and are therefore properly challenged on a Federal Rule of Civil Procedure 12(b)(1) motion to dismiss."  *Roman Catholic Diocese of Dallas v. Sebelius*, 2013 WL 687080, at *6 (N.D.

Tex. 2013) (citing *Xerox Corp. v. Genmoora Corp.*, 888 F.2d 345, 350 (5th Cir. 1989); *WesternGeco L.L.C. v. Ion Geophysical Corp.*, 776 F. Supp. 2d 342, 350 (S.D. Tex. 2011)). A court deciding a Rule 12(b)(1) motion may consider matters of fact which may be in dispute. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). OSIC, as the party asserting jurisdiction, bears the burden of proving that the Court has jurisdiction. *See Ramming*, 281 F.3d at 161.

### B. The Court Has Federal Question Jurisdiction Over OSIC's Suit

Federal district courts "shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "A receiver appointed in any civil action . . . shall . . . be vested with complete jurisdiction and control of all such property with the right to take possession thereof. He shall have capacity to sue in any district without ancillary appointment . . . ." 28 U.S.C. § 754. Defendants argue that section 754 cannot be read to convey jurisdiction on a district court to hear suits brought by parties other than a court-appointed receiver. Defendants' objection is one of statutory construction. The sole issue for the Court to consider is whether section 754 can be read to include suits brought by assignees of the Receiver.

The Court first notes the relative dearth of modern judicial decisions interpreting the scope of section 754 and the other statutes governing federal equity receiverships. *See, e.g.*, Order 9, July 30, 2014 [1093], *in Janvey v. Alguire*, Civil Action No. 3:09-CV-0724-N (N.D. Tex. filed Apr. 20, 2009) ("[T]he majority of [receivership] caselaw is quite old, though some more recent caselaw exists on SEC equity receiverships . . . ."). Thus, in interpreting

receivership statutes, it is often helpful to consider analogous provisions in the United States bankruptcy code. *See id.* ("Accordingly, this Court will make use of the much larger body of law present in bankruptcy, while trying to note any relevant differences between the two bodies of law that could produce different outcomes."). In the apparent absence of authority interpreting the scope of section 754's jurisdictional grant, the Court looks to analogous interpretive issues in bankruptcy law. Specifically, the Court considers the extent to which unsecured creditors committees in Chapter 11 bankruptcy proceedings have authority to bring causes of action on behalf of the trustee or the debtor in possession.

It is apparent that in a number of circuits, including the Fifth Circuit, unsecured creditors committees have the authority to bring suit on behalf of the debtor. *See In re Commodore Int'l, Ltd.*, 262 F.3d 96, 99–100 (2d Cir. 2001); *In re Spaulding Composites Co., Inc.*, 207 B.R. 899, 904 (B.A.P. 9th Cir. 1997); *La. World Exposition v. Fed. Ins. Co.*, 858 F.2d 233, 247 (5th Cir. 1988). Although the Fifth Circuit has indicated a creditors committee may only sue once the debtor or its trustee has unjustifiably refused to bring the suggested action, it has emphasized that the list of requirements is not formalistic. *La. World Exposition*, 858 F.2d at 247; *see also In re Enron Corp.*, 319 B.R. 128, 132 (Bankr. S.D. Tex. 2004) ("The unjustifiable refusal element does not connote a formalistic checklist."). In addition, this Court has recognized that the unjustifiable refusal element is even less applicable in the context of this receivership. *See* Order 5, Sept. 24, 2012 [33], *in Janvey v. IMG Worldwide, Inc.*, Civil Action No. 3:11-CV-0117 (N.D. Tex. filed Jan. 18, 2011) ("Further, even by way of analogy, any possible creditor committee limitations need not

apply."). Thus, the Court is confident that OSIC has authority under the receivership statutes to bring actions on behalf of the Receiver. This conclusion informs the Court's analysis as to whether OSIC may make use of jurisdictional provision granted to receivers in section 754.

The Third Circuit has conducted a detailed analysis of a similar statutory construction issue. *See generally Official Committee of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548 (3d Cir. 2003). Specifically, it considered whether 11 U.S.C. § 544(b), which states "*the trustee* may avoid any transfer of an interest of the debtor . . . ," 11 U.S.C. § 544(b) (emphasis added), also grants a creditors committee the statutory power to maintain avoidance actions.[2] The court acknowledged that the plain language of the statute contemplated only avoidance actions by the trustee. 330 F.3d at 559. It also considered at length the Supreme Court's determination that another provision of the bankruptcy code, applicable to "the trustee," indeed did not contemplate third party standing. *Id.* at 555–59. Noting, however, that the bankruptcy code is to be interpreted holistically, *id.* at 559, the court concluded that Congress intended section 544(b) to permit creditors committees to bring fraudulent transfer actions. *Id.* at 579–80. The court's ultimate conclusion, though based on a myriad of factors and a substantially detailed analysis, was ultimately premised on its determination that interpreting section 544 to include actions by creditors committees would "give effect to the policy of the legislature." *Id.*

---

[2]Section 544(b) is the federal bankruptcy analogue to TUFTA.

It is similarly this Court's task in interpreting the scope of 28 U.S.C. § 754 and its jurisdictional grant, to give effect to the policy of the legislature. The Court finds the Third Circuit's parallel analysis in *Cybergenics* compelling. Although *Cybergenics* dealt with statutory standing, not federal question jurisdiction, the interpretive issue was largely the same. Thus, pursuant to the reasoning discussed above and more fully elaborated upon in *Cybergenics*, the Court finds that section 754 extends its jurisdictional grant to the claims brought by OSIC, as the Receiver's assignee.

### C. OSIC Has Standing To Pursue Its Claims

For the reasons discussed in connection with the jurisdictional analysis, the Court also concludes that OSIC possesses Article III standing to pursue its claims in this action.

### III. LE BONHEUR'S RULE 12(b)(2) MOTION

Le Bonheur also moves to dismiss on the ground that the Court lacks personal jurisdiction over it. Le Bonheur argues that section 754 does not provide any basis for personal jurisdiction, and that the Court must therefore conduct a minimum contacts analysis. This Court has explicitly held otherwise, however. *See Janvey v. Alguire*, 846 F. Supp. 2d 662, 668–69 (N.D. Tex. 2011) ("Section 754 and 28 U.S.C. § 1692 provide the appropriate statutory authority for the Court's exercise of personal jurisdiction in this case."). "[W]here a party has been properly served by the Receiver, the Due Process Clause is satisfied because the party has minimum contacts with the United States as a whole."[3] *Id.* at 669 (quoting *S.E.C. v. Ross*, 504 F.3d 1130, 1146 (9th Cir. 2007)). Moreover, based on the reasoning

---

[3]Le Bonheur does not contend that service was improperly effected under section 754.

conducted above, *see supra* Part II.B, OSIC may also rely on sections 754 and 1692 to establish personal jurisdiction over Le Bonheur.  The Court accordingly concludes Le Bonheur is subject to personal jurisdiction in this district.

## IV. ST. JUDE DEFENDANTS' MOTION TO SEVER

St. Jude Defendants move to sever themselves from this action pursuant to Rules 20 and 21.  They contend they have been improperly joined under Rule 20.  The Court denies the motion.

### A. The Legal Standard for Misjoinder

A court may sever a party from a case when it has been misjoined.  FED. R. CIV. P. 21. "A party is misjoined if the conditions for permissive joinder set forth in Rule 20(a)(2) are not met."  *H.W. Tech., L.C. v. Apple, Inc.*, 2012 WL 3072776, at *2 (N.D. Tex. 2012). Parties may be joined as defendants under Rule 20(a)(2) if:

> **(A)** any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

> **(B)** any question of law or fact common to all defendants will arise in the action.

FED. R. CIV. P. 20(a)(2).  St. Jude Defendants argue the claims against them and the claims against Le Bonheur do not arise out of the same transaction or occurrence or series of transactions or occurrences.[4]

---

[4]St. Jude Defendants also appear to argue that the relief OSIC seeks is not joint and several.  However, Rule 20(a)(2)(A) permits joinder when a plaintiff seeks joint *or* several relief.  FED. R. CIV. P. 20(a)(2)(A).

First, it is "clear that the fact that the defendants are independent actors does not preclude joinder as long as their actions are part of the same transaction, occurrence, or series of transactions or occurrences." *Content Guard Holdings, Inc. v. Amazon.com., Inc.*, 2015 WL 1263346, at \*2 (E.D. Tex. 2015) (internal quotation marks omitted) (quoting *In re EMC Corp.*, 677 F.3d 1351, 1356 (Fed. Cir. 2012)).

> [I]ndependent defendants satisfy the transaction-or-occurrence test of Rule 20 when there is a logical relationship between the separate causes of action. The logical relationship test is satisfied if there is substantial evidentiary overlap in the facts giving rise to the cause of action against each defendant. In other words, the defendants' allegedly infringing acts, which give rise to the individual claims of infringement, must *share* an aggregate of operative facts.

*In re EMC Corp.*, 677 F.3d at 1356.

Here, the causes of action against each Defendant have the required evidentiary overlap. The crux of OSIC's claim is that the Stanford entities unlawfully transferred charitable contributions to each Defendant in an attempt to hinder, defraud, or delay their creditors. *See* TEX. BUS. & COM. CODE ANN. § 24.005(a)(1). There is substantial factual overlap between the causes of action as applied to each Defendant because OSIC must prove the elements common to each transfer that demonstrate each was fraudulent. In other words, OSIC anticipates proving that Stanford operated a massive Ponzi scheme, and that its transfers were accordingly fraudulent. The Stanford Ponzi scheme is the primary factual basis for OSIC's claims against each Defendant.

St. Jude Defendants also urge the Court to sever them from the case because not doing so would result in confusion and unfair prejudice. A district court does have discretion to

sever a properly joined action if it "might otherwise cause delay or prejudice." *Applewhite v. Reichhold Chems., Inc.*, 67 F.3d 571, 574 (5th Cir. 1995). St. Jude Defendants argue there exists a substantial risk that a jury would confuse the Defendants in this case. The Court disagrees. While Defendants in this action, as hospitals and associated fund-raising entities, perform similar functions, the Court finds the risk of confusion and prejudice no greater than a typical case in which multiple defendants are joined. The Court trusts the parties in this action to adequately distinguish the Defendants and set forth the respective cases for each in an orderly and clear manner. The Court declines to exercise its discretion to sever St. Jude Defendants from the case.

## V. CHOICE-OF-LAW ISSUES

The parties disagree over whether TUFTA or Tennessee's Uniform Fraudulent Transfer Act ("TNUFTA"), TENN. CODE ANN. §§ 66-3-301 – 66-3-325, applies to OSIC's fraudulent transfer claims. The Court concludes that as to the issues raised by the parties' motions, there is no conflict of laws to resolve.

In conducting a choice-of-law analysis, the Court must first determine whether apparently conflicting laws actually conflict. If no conflict exists, the Court need not conduct a choice-of-law analysis. *See Covington v. Alban Offshore Ltd.*, 650 F.3d 556, 558–59 (5th Cir. 2011) ("[W]e need not decide in this case whether those principles should be drawn from Texas law or federal law, because both bodies of law lead us to the same conclusion."); *Schneider Nat'l Transp. v. Ford Motor Co.*, 280 F.3d 532, 536 (5th Cir. 2002) ("If the laws of the states do not conflict, then no choice-of-law analysis is necessary.").

This Court has previously held that there is no actual conflict between UFTA-enacting states.[5]  *See* Order 12–14, Jan. 22, 2013 [909] (the "Alguire Order"), *in Janvey v. Alguire*, No. 3:09-CV-0724-N (N.D. Tex. filed Apr. 20, 2009).  As is the case here, defendants in that action argued there was an actual conflict between different states' UFTA laws because TUFTA permits the recovery of attorney's fees and costs, *see* TEX. BUS. & COM. CODE ANN. § 24.013, while other UFTA statutes do not.  *See* Alguire Order at 14.  The Court in *Alguire* reserved that question because the Receiver in that case had not yet briefed his request for attorney's fees.  *See* Alguire Order at 14.  Similarly, OSIC here has not briefed its request for attorney's fees.  The Court thus applies TUFTA to this action, as there is no conflict between the applicable provisions of TUFTA and TNUFTA.  "Thus, for purposes of this Order, the Court need not yet decide either whether an award of attorneys' fees to [OSIC] would be equitable and just and, if so, whether Texas law should apply (or vice versa)."  *Id.*

## VI. DISPOSITIVE MOTIONS PERTAINING TO ST. JUDE DEFENDANTS

OSIC and St. Jude Defendants have filed cross-motions for summary judgment.[6]  St. Jude Defendants have also filed a motion to exclude the expert opinions of Karyl Van Tassel,

---

[5]Both Texas and Tennessee have adopted versions of the Uniform Fraudulent Transfer Act.  *See* TEX. BUS. & COM. CODE ANN. § 24.012 (providing the statute is to be "construed to effectuate its general purpose to make uniform the law with respect to the subject of this chapter among states enacting it"); TENN. CODE ANN. § 66-3-312 (same).

[6]The Court notes that Le Bonheur and the St. Jude Defendants each have filed motions to dismiss that remain pending.  The Court has addressed and rejected the jurisdictional arguments raised in those motions.  To the extent the motions for summary judgment reassert the remaining arguments originally offered in the motions to dismiss, the Court's ruling on the motions for summary judgment renders the motions to dismiss moot.

upon which OSIC's motion for summary judgment relies. The Court grants in part OSIC's motion for summary judgment, denies St. Jude Defendants' motion to strike, and denies St. Jude Defendants' motion for summary judgment.

### A. The Summary Judgment Legal Standard

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, "he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25. Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return

a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Indeed, factual controversies are resolved in favor of the nonmoving party "'only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts.'" *Olabisiomotosho v. City of Hous.*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### B. The Court Denies St. Jude Defendants' Motion to Strike

St. Jude moves to strike Van Tassel's declarations, arguing they are deficient under Federal Rule of Evidence 702. Rule 702 permits an expert witness to testify if:

> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> **(b)** the testimony is based on sufficient facts or data;
>
> **(c)** the testimony is the product of reliable principles and methods; and
>
> **(d)** the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. The proponent of expert testimony bears the burden of establishing the requirements for admissibility by a preponderance of the evidence. *United States v. Fullwood*, 342 F.3d 409, 412 (5th Cir. 2003).

St. Jude Defendants object generally that Van Tassel fails to "employ[] a recognized forensic tracing methodology with analysis of specific transfers to the St. Jude Defendants."

ORDER – PAGE 14

Br. Supp. Mot. Strike 4 [82]. They complain that "[o]ther than her *ipse dixit* claims that she is knowledgeable about the subject matter from documents generally made available to her and 'her team' by the Receiver, there is no basis for evaluating her claims." *Id.* at 6. Their principal complaint is thus that Van Tassel has failed to explain how she arrived at her conclusion that the transfers received by St. Jude Defendants consisted of proceeds from Stanford's illegal sale of fraudulent CDs.[7]

The Court disagrees with St. Jude Defendants' characterization of Van Tassel's declarations. Van Tassel specifically identifies the bank accounts from which St. Jude Defendants received transfers. *See, e.g.*, Decl. of Karyl Van Tassel ¶ 26 [69-2] ("St. Jude Declaration"). Referencing her previous declarations, she goes on to explain her conclusion that the funds contained in the operative bank accounts were derived from fraudulent CD proceeds. *See id.* ¶¶ 27–30. The Court finds that Van Tassel has adequately explained her reasoning in opining that St. Jude Defendants received transfers consisting of proceeds from Stanford's fraudulent scheme while Stanford was insolvent.[8]

---

[7] The Court questions the relevance of whether the actual funds transferred consisted of CD proceeds. The Ponzi scheme presumption establishes fraudulent intent for any transfer made by a Ponzi scheme. *See, e.g.*, *Janvey v. Brown*, 767 F.3d 430, 439 (5th Cir. 2014). That the transferred funds themselves were illegally obtained does not appear to be a necessary element.

[8] *See Janvey v. Democratic Senatorial Campaign Comm.*, 793 F. Supp. 2d 825, 856 n.55 (N.D. Tex. 2011) (rejecting similar tracing objections made to Van Tassel's declarations), *aff'd*, 712 F.3d 185 (5th Cir. 2013).

St. Jude Defendants further object that Van Tassel fails to identify the specific documents she relied on in crafting these opinions. However, Van Tassel notes that her conclusions regarding the source of the transfers stem from her review of records from the banks maintaining Stanford's operating accounts. *See, e.g.*, *id.* ¶ 27 ("Based on FTS's review of records *from Trustmark* . . . ."). To the extent St. Jude Defendants object that OSIC did not provide said bank records in discovery, this is an objection that should have been included in a motion to compel. It does not independently invalidate Van Tassel's opinions regarding the source and composition of the transfers received by St. Jude Defendants.

In sum, the Court finds Van Tassel's declarations sufficiently reliable and helpful to the fact finder to be admissible. Van Tassel has identified the accounts from which St. Jude Defendants received transfers, and has explained her bases for concluding those transfers consisted of stolen funds. Van Tassel has adequately identified the nature of the records she considered in formulating her opinions and conclusions. Due to the voluminous nature of the records involved, the Court declines to require more particular identification of the specific documents or pages that may have been involved. St. Jude Defendants' remaining objections go to the weight, not the admissibility of Van Tassel's opinions. *See, e.g.*, Reply Supp. Mot. Exclude 3 [106] (objecting that Van Tassel failed to consider potentially innocuous purposes behind the transfers at issue).

### *C. OSIC Is Entitled to Partial Summary Judgment*

OSIC moves for summary judgment as to $6,417,774.80 in funds transferred from Stanford to the St. Jude Defendants. OSIC's claim is made pursuant to section 24.005(a) of

the Texas Business and Commerce Code. *See* Pls.' Br. Supp. Mot. Summ. J. ¶ 20 [79]. After considering St. Jude Defendants' responsive arguments made both in their response to OSIC's motion and in their motion for summary judgment, the Court's grants OSIC's motion for summary judgment in part and denies St. Jude Defendants' motion for summary judgment.

### 1. OSIC Fails to Establish as a Matter of Law All Its Claims Are Timely. –

Section 24.005(a)(1) claims under TUFTA must be commenced "within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could have been discovered by the claimant." TEX. BUS. & COM. CODE ANN. § 24.010(a)(1). OSIC commenced this action on Feburary 15, 2011, and it asserts claims based on transfers made before February 15, 2007. *See* Pls.' Br. Supp. Mot. Summ. J. ¶ 12. St. Jude Defendants thus argue that claims based on those transfers are time barred. OSIC argues it is entitled to rely on TUFTA's built-in, one-year discovery rule because it did not and could not have reasonably discovered its claims more than a year before the date it filed suit.

As a threshold matter, the Court holds that TUFTA's discovery rule applies to OSIC's claims. In Texas, a discovery rule is applicable when "the alleged wrongful act and resulting injury were inherently undiscoverable at the time they occurred but may be objectively verified." *S.V. v. R.V.*, 933 S.W.2d 1, 6 (Tex. 1996). The Court has previously noted in a fraudulent transfer action brought by the Receiver that similar fraudulent transfer claims qualify for treatment under the discovery rule. *See Janvey v. Democratic Senatorial*

ORDER – PAGE 17

*Campaign Comm.*, 793 F. Supp. 2d 825, 833–35 (N.D. Tex. 2011).  For the same reasons discussed there, the Court concludes that the discovery rule applies to OSIC's claims.  The Court must therefore determine whether either party can prove as a matter of law when OSIC did or could have reasonably discovered its claims.

"A defendant moving for summary judgment on the affirmative defense of limitations has the burden to establish that defense conclusively." *Cadle Co. v. Wilson*, 136 S.W.3d 345, 352 (Tex. App. – Austin 2004, no pet.) (citing *KPMG Peat Marwick v. Harrison Cnty. Houston Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999)).  To prevail, "the defendant must conclusively prove when the cause of action accrued, and (2) negate the discovery rule, if it applies and has been pleaded or otherwise raised, by proving as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered, the nature of its injury." *Id.* (citing *KPMG*, 988 S.W.2d at 748).  "When a plaintiff knew or should have known of an injury is generally a question of fact." *Id.* (citing *Nat'l W. Life Ins. Co. v. Rowe*, 86 S.W.3d 285, 298 (Tex. App – Austin 2002), *rev'd on other grounds*, 164 S.W.3d 389 (Tex. 2005)).  But, "if reasonable minds could not differ about the conclusion to be drawn from the facts in the record, then the start of the limitations period may be determined as a matter of law." *Id.* at 352.

St. Jude Defendants argue OSIC had actual or constructive knowledge of its claims as early as March of 2009, when the Receiver discovered some of the transfers to the St. Jude

Defendants.[9] *See* St. Jude Defs.' Resp. 9 [95] (citing St. Jude Defs.' App. 241 [96]). St. Jude Defendants also point out that John Little, the Court-appointed Examiner and member of OSIC, asked the Receiver as early as August of 2009 to begin bringing claims against charities. *Id.* (citing Notice Filing Official Tr. 13 [664], *in* Main SEC Action. Finally, St. Jude Defendants argue the Receiver should have been on notice of the transfers in 2007 or 2008, when the contributions by Stanford were covered in popular media. *Id.* at 10. The Court finds these arguments insufficient to establish as a matter of law when OSIC (or the Receiver) did discover or should have discovered the claims at issue in this case.

However, OSIC also fails to establish as a matter of law that it brought these claims within a year of when it or the Receiver did discover, or in the exercise of reasonable diligence, should have discovered the claims. OSIC has cited no evidence establishing the Receiver's diligence in discovering the claims at issue in this case. OSIC primarily refers the Court to the Court's decision in *Democratic Senatorial Campaign Committee*, in which it held that the Receiver's TUFTA claims were timely as a matter of law. 793 F. Supp. 2d at 836–37. However, in that case the Receiver brought his claims a year and four days after

---

[9]It seems clear that OSIC takes assignment of claims from the Receiver along with any limitations arguments that could be asserted against the Receiver. *See, e.g.*, *State v. Oakley*, 181 S.W.3d 855, 860 (Tex. App. – Austin 2005) ("Moreover, the common-law principles of assignment would also impose on the assignee the same statutory limitations imposed on the assignor . . . ."), *rev'd in part on other grounds*, 227 S.W.3d 58 (Tex. 2007); *Burns v. Bishop*, 48 S.W.3d 459, 466 (Tex. App. – Houston [14th Dist.] 2001, no pet.) ("It is axiomatic that an assignee or subrogee walks in the shoes of his assignor and takes the assigned rights subject to all defenses which the opposing party might be able to assert against his assignor."). The Court thus disagrees with OSIC's contention that it could not have been aware of its claims in this action until after it was formed in August of 2010.

he had been appointed. *See id.* at 837. The Court therefore had little difficulty in concluding the Receiver could not have reasonably discovered his claims within four days of his appointment. *Id.* Here, however, the Receiver had been in his position nearly three years before this action was filed. The Court thus concludes that as to the transfers made before February 15, 2007, there remain fact issues as to when OSIC/the Receiver should have discovered the claims. The Court thus denies both parties' motions for summary judgment as to claims based on transfers made prior to February 15, 2007.

*2. OSIC Demonstrates St. Jude Defendants Are Liable for the Fraudulent Transfers.[10]* – In order to recover the demonstrated transfers, OSIC is "required to demonstrate that [St. Jude Defendants] received transfers from [Stanford] that were made with actual intent to defraud." *Warfield v. Byron*, 436 F.3d 551, 558 (5th Cir. 2006). "[T]he mere existence of a Ponzi scheme is sufficient to establish actual intent to defraud." *Donnell v. Kowell*, 533 F. 3d 762, 770 (9th Cir. 2008) (alteration in original) (citations and internal quotation marks omitted); *accord Byron*, 436 F.3d at 558 ("The Receiver's proof that [the debtors] operated as a Ponzi scheme establishe[s] the fraudulent intent behind transfers made by [the Receivership entities]." (citing *Scholes v. Lehmann*, 56 F.3d 750, 757 (7th Cir. 1995))). Section 24.005(a)(1) claims are also subject to an affirmative defense if the

---

[10]Although the Court addresses liability as to each of the purported fraudulent transfers, St. Jude Defendants' ultimate liability for the potentially time-barred claims will depend on a showing that they were timely filed.

defendants "took in good faith and for a reasonably equivalent value." TEX. BUS. & COM. CODE ANN. § 24.009(a).

OSIC carries its summary judgment burden in establishing the fraudulent nature of the transfers at issue. OSIC provides evidence that establishes, consistent with a plethora of holdings by both this Court and the Fifth Circuit, that the Stanford entities were operated as a Ponzi scheme. *See* St. Jude Decl. ¶¶ 6–9. OSIC also presents evidence explaining the roles that the particular Stanford transferors played within the Ponzi scheme. *See id.* ¶¶ 9. Although St. Jude Defendants objected to Van Tassel's declarations as discussed above, they do not offer evidence contradicting Van Tassel's opinions as to the existence of the Ponzi scheme, or the role the transferor entities played within it.

OSIC also presents evidence outlining the dates and amounts of the transfers made to the St. Jude Defendants. *See id.* ¶ 25. OSIC demonstrates that these transfers came from bank accounts that consisted primarily, if not entirely, of proceeds from the sale of fraudulent CDs. *Id.* ¶¶ 26–30. St. Jude Defendants have presented no evidence contesting that they received these transfers. The Court accordingly concludes that OSIC has demonstrated St. Jude Defendants' liability on the asserted fraudulent transfers.

*3. St. Jude Defendants Cannot Establish They Took Transfers In Exchange for Reasonably Equivalent Value.* – St. Jude Defendants argue they took the transfers in exchange for reasonably equivalent value because the transfers satisfied an antecedent debt. *See* St. Jude Defs.' Resp. Mot. Summ. J. 4 (citing TEX. BUS. & COM. CODE ANN.

§ 24.004(a)).  St. Jude Defendants' argument is that in making his charitable pledge to St. Jude Defendants, Allen Stanford created an antecedent debt that was satisfied by payment of the transfers at issue in this case.  According to St. Jude Defendants, charitable pledges are enforceable agreements under both Texas and Tennessee law.  *See* St. Jude Defs.' Br. Supp. Mot. Summ. J. 13 [88] (citing *Thompson v. McAllen Federated Woman's Bldg. Corp.*, 273 S.W.2d 105 (Tex. App. – San Antonio 1954, no writ); TENN. CODE ANN. § 25-13-110).  Even accepting St. Jude Defendants' arguments about the legal status of charitable pledges, the Court finds they still do not create antecedent debt such that Stanford's transfers were given for reasonably equivalent value.

The Court finds its reasoning from *Janvey v. Alguire*, 2013 WL 2451738 (N.D. Tex. 2013), and the Fifth Circuit's subsequent affirmation of that decision, instructive on this question.  In *Alguire*, investor–defendants argued that interest payments they received from Stanford were taken in exchange for reasonably equivalent value because they were provided pursuant to the investment contracts with Stanford.  *Id.* at *9–10.  The Court first noted that TUFTA defines "debt" as liability on a claim.  *Id.* at *10.  The Court then reasoned that because contracts with a Ponzi scheme are void and unenforceable, the defendants had no "claim" based on the interest payments they were to receive under the contracts.  *Id.* at *10.  The Fifth Circuit affirmed this result, concluding that there was no valid claim for interest payments because the CD contracts were void.  *Janvey v. Brown*, 767 F.3d 430, 441 (5th Cir. 2014).  The Fifth Circuit also observed that recovery on the interest payments would not

come from Stanford's assets, but from assets belonging to other defrauded investors. *Id.* at 441–42.

The *Brown* panel also reiterated the Fifth Circuit's holding from *Warfield*. *Warfield* "explained that '[t]he primary consideration in analyzing the exchange for value for any transfer is the degree to which the transferor's net worth is preserved.'" *Brown*, 767 F3d at 442 (citing *Warfield*, 436 F.3d at 560). Payment of interest to investors did nothing to benefit the Ponzi entities, and thus provided nothing of value to the creditors once the entities entered receivership. *Id.* Thus, the Court in *Brown* ultimately concluded that the transfers of interest payments to investors were not provided in exchange for reasonably equivalent value.

The Court must conclude the same here. St. Jude Defendants essentially make the same argument that the investor–defendants did in *Brown*; i.e., the payments were made pursuant to a binding contract. However, as this Court held in *Alguire*, contracts with a Ponzi scheme are void and unenforceable. 2013 WL 2451738, at *10. St. Jude Defendants have no claim to an antecedent debt because the void, unenforceable charitable pledges, which were fulfilled with stolen money, do not create "claims" on behalf of St. Jude Defendants.

St. Jude Defendants argue that the transfers in this case are more like the repayments of principal in *Brown*, which the investors were permitted to keep. *See* St. Jude Defs.' Br. Supp. Mot. Summ. J. 14–15. The two are markedly different, however. The principal repaid

to investors in *Brown* was simply the return of cash the investors had given to the Stanford entities. Here, St. Jude Defendants did not give anything to Stanford. Thus, St. Jude Defendants do not have the same fraud and restitution clams the investors did based on the theft of their investment principal. *See Alguire*, 2013 WL 2451738, at *10. Finally, this outcome is in accord with the *Warfield* consideration that value be assessed based on whether the transfer preserves the value of the estate. The transfers cannot have preserved the value of the estate because St. Jude Defendants did not provide anything, let alone something of value, to the Stanford entities. The Court holds St. Jude Defendants cannot show they took the transfers at issue in exchange for reasonably equivalent value.

*4. OSIC's Claims Are Not Barred by the Charitable Donation Protection Act.* – St. Jude Defendants also argue that OSIC's fraudulent transfer claims are barred by 11 U.S.C. § 544(b). Section 544 is a section within the U.S. bankruptcy code that permits a bankruptcy trustee to bring fraudulent transfer avoidance actions on behalf of the debtor. 11 U.S.C. § 544. Section 544(b), however, provides that the trustee's avoidance power "shall not apply to a transfer of a charitable contribution (as that term is defined in section 548(d)(3)) . . . ." 11 U.S.C. § 544(b)(2). Section 548(d)(3) defines charitable contribution as "a charitable contribution, as that term is defined in section 170(c) of the Internal Revenue Code of 1986, if that contribution– (A) is made by a natural person . . . ." 11 U.S.C. § 548(d)(3). OSIC

does not dispute that the contributions meet the definition of section 170(c) of the Internal Revenue Code.[11]

The Court however declines to credit this argument because this action, and the Stanford Receivership as a whole, are not proceeding under the United States Bankruptcy Code. Nor has OSIC brought an avoidance claim under Section 544 in this action. St. Jude Defendants' reliance on the Bankruptcy Code is based on OSIC's representations that it occupies a similar role to unsecured creditors committees under the Bankruptcy Code. However, this Court has noted that while it may look to the Bankruptcy Code for guidance in its oversight of OSIC, it is not bound by the Bankruptcy Code. *See* Order 4–5, Sept. 24, 2012 [33], *in Janvey v. IMG Worldwide, Inc.*, No. 3:11-CV-0117-N (N.D. Tex. filed Jan. 18, 2011) (citing *SEC v. TLC Invs. & Trade Co.*, 147 F. Supp. 2d 1031, 1039 (C.D. Cal. 2001)). St. Jude Defendants' section 544(b)(2) argument is thus misguided because this proceeding arises from a federal equity receivership, not a federal bankruptcy.[12]

---

[11]OSIC does argue that the contributions were not made by a "natural person." Because the Court finds section 544(b) facially inapplicable, the Court does not address this argument.

[12]St. Jude Defendants' citation to *Cedar Bayou Baptist Church v. Gregory-Edwards, Inc.*, 987 S.W.2d 156 (Tex. App. – Houston [14th Dist.] 1999, no pet.), is thus readily distinguishable. *Cedar Bayou* held that section 544(b)(2) preempts TUFTA claims. *Id.* at 159. In *Cedar Bayou*, however, the transferor was the subject of a Chapter 11 bankruptcy proceeding. *Id.* at 157. The plaintiff in the case had purchased from the Chapter 11 trustee the right to recover the alleged fraudulent transfers. *Id.* The court's holding was based in large part on the conclusion that the plaintiff did not have an independent claim, but the claim had vested with the bankruptcy trustee. *Id.* at 159. The plaintiff was "attempting as an assignee to do what the trustee was prohibited from doing based on . . . the federal

For much the same reason, St. Jude Defendants' arguments concerning implied conflict preemption also fail to persuade.  *See* St. Jude Defs.' Br. Supp. Mot. Summ. J. 22–25.  Although the precise parameters of this argument are not entirely clear, St. Jude Defendants contend OSIC has attempted to make "an impermissible 'end run' around [federal law]."  *Id.* at 22 (quoting *Carrion v. Agfa Constr., Inc.*, 720 F.3d 382, 383 (2d. Cir. 2013)).  St. Jude Defendants' implied preemption argument is based on TUFTA's alleged interference with the purpose of the United States Bankruptcy Code.  Again, this is not a bankruptcy case.  The SEC and the Receiver elected to distribute Stanford's assets through a federal receivership.  To the extent any law conflicts with the purposes of the Bankruptcy Code, it is the federal equity receivership statute, 28 U.S.C. § 754.  The United States Bankruptcy Code does not impliedly preempt OSIC's TUFTA claims in this case.

***5. The Court Finds Liability But Declines to Grant Judgment.* –** Based on the above, the Court finds that OSIC has demonstrated St. Jude Defendants are liable for $4,333,774.80 in fraudulent transfers.[13]  However, as St. Jude Defendants point out, OSIC fails to demonstrate which of the discrete Defendants received which transfers.  *See* St. Jude Defs.'

---

preemption."  *Id.*  Here, the Stanford entities were never the subject of a bankruptcy proceeding, so the Bankruptcy Code does not apply.  *Cedar Bayou* does not apply to this case.

[13]This value represents the sum of the transfers for which claims are unquestionably timely.  Should OSIC demonstrate entitlement to the discovery rule, the Court would find St. Jude Defendants liable for the remaining $2,084,000.00 in pre-February 15, 2007 transfers.

Resp. Mot. Summ. J. 15–16. For that reason, the Court determines it cannot yet render judgment on these claims.

## VII. DISPOSITIVE MOTIONS AS TO LE BONHEUR

OSIC also moves for summary judgment against Le Bonheur, which itself has filed a cross motion for summary judgment. The Court grants OSIC's motion in part and denies Le Bonheur's motion.

### A. OSIC Is Entitled to Partial Summary Judgment

*1. OSIC Has Not Demonstrated All Its Claims Are Timely.* – OSIC seeks recovery of six discreet transfers made by Stanford entities to Le Bonheur. *See* Pls.' Br. Supp. Mot. Summ. J. Le Bonheur ¶ 12 [75]. Three of these transfers occurred before February 15, 2007, which this Court identified above as the operative date for TUFTA's statute of limitations in this action. *See supra* Subpart VI.C.1. For the same reasons discussed above, the Court concludes Le Bonheur is not entitled to summary judgment on these claims. TUFTA's built-in discovery rule is facially applicable, and Le Bonheur fails to carry its burden in establishing when OSIC or the Receiver were on notice of the claims at issue. However, nor can OSIC establish as a matter of law that its claims are timely. Accordingly, the Court denies both parties' motions for summary judgment as to claims based on the transfers made in 2005 and 2006.

*2. OSIC Demonstrates Le Bonheur Is Liable for the Fraudulent Transfers.* – OSIC makes the same showing it did for St. Jude Defendants as to the existence of the Stanford

Ponzi scheme and the Stanford entities' insolvency when the relevant transfers were made. *See, e.g.*, Decl. of Karyl Van Tassel ¶¶ 19–22 [69-1] ("Le Bonheur Declaration"); *see also* Le Bonheur Resp. Mot. Summ. J. ¶ 14 ("Le Bonheur concedes, for purposes of summary judgment, that applicable Fifth Circuit case authority has established that as of the dates of the transfers to Le Bonheur which are the subject of this litigation, the Stanford entities were considered, as a matter of law, insolvent.")

OSIC also provides evidence of the transfers made by the Stanford entities to Le Bonheur. *See* Le Bonheur Decl. ¶¶ 25–32; *see also* Le Bonheur Resp. Mot. Summ. J. ¶ 12 ("Le Bonheur concedes that its records reflect a $9,000 contribution in August 2006 and a $2,500 contribution in April 2007, in addition to the three $500,000 contributions which are the primary basis for the litigation . . . ."). Le Bonheur presents no evidence contesting the occurrence of these transfers, or that they were made by insolvent Stanford entities.

Le Bonheur offers a different take on the "reasonably equivalent value" defense offered by St. Jude Defendants and rejected above. Le Bonheur contends that it gave reasonably equivalent (or at least some) value to the Stanford entities in exchange for the transfers because they were able to take a charitable tax write-off based on the contributions. Le Bonheur Resp. Mot. Summ. J. 17 [98]. Le Bonheur concedes that it has no evidence suggesting Stanford did receive any favorable tax treatment based on the contributions, but contends discovery has not yet closed and it has thus not had an opportunity to uncover such evidence.

OSIC argues that no tax deduction could have been reasonably equivalent to the value received by Le Bonheur.  Reply Supp. Mot. Summ. J. 4–5 [111].  Although the Court is inclined to agree,[14] TUFTA provides that a good faith transferee may reduce the amount of the judgment against it in the amount of the value it did provide to the transferor.  TEX. BUS. & COM. CODE. ANN. § 24.009(d)(1)(C).  Thus, should Le Bonheur uncover evidence before the end of discovery that the Stanford entities received value in the form of favorable tax treatment, Le Bonheur would in theory be entitled to a corresponding deduction in the amount of the judgment against it.

### 3. The Court Finds Liability but Declines to Grant Judgment. – Based on the above, the Court finds that Le Bonheur is liable for $507,500 in fraudulent transfers.[15]  However, because there remain fact issues as to whether Le Bonheur is entitled to any deduction in its liability because of value rendered, the Court determines it cannot yet render judgment.

---

[14]Even without evidence as to the amount of any favorable tax treatment Stanford may have received, the Court is prepared to conclude as a matter of law that any value exchanged was not "reasonably equivalent."  In theory, the benefit to Stanford from the charitable deduction associated with the contributions to Le Bonheur would be equal to Stanford's marginal rate applied to the amount of Stanford's deduction.  Even assuming the maximum corporate tax rate of 35%, see 26 U.S.C. § 11(b)(1), the value obtained would not be "reasonably equivalent" to the amount of the contribution.

[15]This value represents the sum of the transfers for which claims are unquestionably timely.  Should OSIC demonstrate entitlement to the discovery rule, the Court would find Le Bonheur liable for the remaining $1,009,000.00 in pre-February 15, 2007 transfers.

## CONCLUSION

The Court denies St. Jude Defendants' motion to sever and St. Jude Defendants' motion to exclude the expert opinion of Karyl Van Tassel.  The Court denies both St. Jude Defendants' and Le Bonheur's respective motions to dismiss and motions for summary judgment.  The Court grants OSIC's motion for summary judgment against St. Jude Defendants in part, as follows:

1.    OSIC has established St. Jude Defendants' liability for $4,333,774.80 in fraudulent transfers;

2.    although OSIC has established the elements of its fraudulent transfer claims against St. Jude Defendants for 2,084,000.00 in transfers made prior to February 15, 2007, a fact question remains as to whether those claims are timely;

3.    a fact question remains as to apportionment of damages because OSIC has not established which of the discreet St. Jude Defendants received the transfers at issue.

The Court grants OSIC's motion for summary judgment against Le Bonheur in part, as follows:

1.    OSIC has established Le Bonheur's liability for $507,500.00 in fraudulent transfers;

2.  although OSIC has established the elements of its fraudulent transfer claims against Le Bonheur for $1,009,000.00 in transfers made prior to February 15, 2007, a fact question remains as to whether those claims are timely;

3.  a fact question remains as to whether Stanford received some value in exchange for the transfers, and thus whether Le Bonheur is entitled to a corresponding reduction in damages.

The Court denies OSIC's motion for summary judgment as to its claims for unjust enrichment.

Signed July 22, 2015.

David C. Godbey
United States District Judge

ORDER – PAGE 31